UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SEYED REZA SAADAT MOSTAFAVI, ATOUSA ASSADZADEH, GHARACHEHDAGHI, on behalf of themselves and their minor child A.S.S.M., | * | |
| Plaintiffs, | * | Civil Action No. 25-cv-12287-ADB |
| v. | * | |
| DONALD J. TRUMP, in his official capacity as President of The United States of America, MARCO RUBIO, in his official capacity as United States Secretary of State, | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Sayed Reza Saadat Mostafavi ("Mostafavi"), Atousa Assadzadeh ("Assadzadeh"), and their minor child A.S.S.M. ("A.S.S.M.") (collectively, "Plaintiffs") bring suit against Marco Rubio, in his official capacity as Secretary of the United States Department of State (the "State Department"), and Donald Trump, in his official capacity as President of the United States (collectively, "Defendants"), challenging several executive actions related to visa adjudication. Specifically, Plaintiffs challenge Presidential Proclamation No. 10949, Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats, 90 Fed. Reg. 24497 (June 10, 2025) ("Proclamation

10949"), the State Department's policies implementing Proclamation 10949, and the State Department's failure to honor the Department of Homeland Security's prior finding that Plaintiffs' entry to the United States was in the national interest. [ECF No. 13 ¶ 1 ("Amended Complaint" or "Am. Compl.")]. For the following reasons, Defendants' motion to dismiss, [ECF No. 22], is **GRANTED IN PART** and **DENIED IN PART**.

# I. BACKGROUND

The Court will provide a brief review of the applicable statutory scheme, followed by a summary of the relevant facts, taken primarily from the Amended Complaint.

## A. Statutory Scheme

### 1. The Visa Application Process

Under the Immigration and Nationality Act of 1952 ("INA"), a foreign citizen may, as a general matter, only enter the United States with either an immigrant or a nonimmigrant visa. 8 U.S.C. §§ 1181(a), 1182(a)(7). Immigrant employment-based visas may be issued to EB-2 applicants—individuals who hold "advanced degrees" or possess "exceptional ability." Id. § 1153(b)(2). Typically, a labor certificate[1] is required for EB-2 applicants, but this requirement is waived in situations where United States Citizenship and Immigration Services ("USCIS") finds that such a waiver is in the national interest. Id. § 1153(b)(2)(B)(i). As USCIS set forth in its decision in Dhanasar, 26 I&N Dec. 884, 889 (AAO 2016):

> after eligibility for EB-2 classification has been established, USCIS may grant a national interest waiver if the petitioner demonstrates by a preponderance of the

[1] An employer can apply "for a labor certification from the U.S. Department of Labor confirming that 'there are not sufficient workers who are able, willing, qualified . . . and available . . . and the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." Border States Indus., Inc. v. U.S. Citizenship & Immigr. Servs., 751 F. Supp. 3d 956, 960 (D. Neb. 2024) (citing 8 U.S.C. § 1182(a)(5)(A)(i)(I)–(II)).

> evidence: (1) that the foreign national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. If these three elements are satisfied, USCIS may approve the national interest waiver as a matter of discretion.

In order to initiate an application for an EB-2 visa with a national interest waiver, a noncitizen must file a Form I-140 Petition with USCIS. 8 C.F.R. § 204.5(a). USCIS then determines if the petitioner qualifies for an EB-2 classification and uses its discretion to determine whether the petitioner is eligible for a waiver under the Dhanasar framework. See 8 C.F.R. § 204.5(k). If USCIS approves the applicant's petition, and the applicant is residing outside the United States, the petition is sent to the State Department's National Visa Center ("NVC") for pre-processing, see id. § 204.5(n), and the petitioner submits the immigrant visa electronic application to the State Department on Form DS-260, with supporting documentation, so the State Department can determine if the person is otherwise eligible for admission to the United States, 22 CFR § 42.63. After the NVC verifies that the petitioner has submitted the required documentation and fees, the NVC will schedule the petitioner for an interview with a consular officer to make and execute a visa application and then will transfer the visa case to the applicable embassy or consulate. Id. § 42.67. If an applicant is a national or resident of Iran, where the United States does not have consular representation, the applicant is typically assigned a processing post in Abu Dhabi, Ankara, or Yerevan. 9 U.S. Dep't of State, Foreign Affairs Manual ("FAM") § 504.4–8(E)(1)(b).

Once the visa case is transferred to the appropriate consulate, a consular officer conducts an interview of the applicant and, taking into consideration the visa application and the applicant's representations during the interview, determines whether to "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed

and executed before a consular officer . . . the consular officer must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law . . . .")1; id. § 40.6 ("A visa can be refused only upon a ground specifically set out in the law or implementing regulations."); 9 FAM § 301.4-1(b)(1)–(15) (providing summary of grounds for refusal, including describing Section 221(g) refusal as "[a]pplication does not comply with INA"). A consular officer, however, "cannot temporarily refuse, suspend . . . or hold the visa for future action." 9 FAM § 504.9-2. "The authority to grant a visa rests exclusively with the consular officer." Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 151 (D. Mass. 2024) (first citing 8 U.S.C. § 1201(a)(1)(A); and then citing 22 C.F.R. § 42.71(a)).

If the consular officer refuses the visa "because the officer determines the alien to be inadmissible," the officer must "provide the alien with a timely written notice that . . . (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1). "The consular officer 'may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change' and may 'place an officially refused application in administrative processing.'" Ghannad-Rezaie, 757 F. Supp. 3d at 151 (quoting Karimova v. Abate, No. 23-cv-05178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024)).

Section 221(g) of the INA, the applicable ground for refusal in this case, provides that no visa shall be issued if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g); see also id. § 1182(a)(1)–(10) (defining "[c]lasses of aliens ineligible for visas or admission" on, among others, health-related grounds, criminal and related grounds, and security and related grounds); 9 FAM § 302.1-8(B)(a) (listing additional grounds for refusing a visa under Section 221(g), including where an applicant "fails to furnish information as required by law or regulations" or an application "is not supported by the documents required by law or regulations").

In some cases, "[a] refusal under INA § 221(g) may be 'overcome . . . when additional evidence is presented, or administrative processing is completed.'" Ghannad-Rezaie, 757 F. Supp. 3d at 151 (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)). As relevant to the instant case, if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). If new evidence is presented, a consular officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa." Ghannad-Rezaie, 757 F. Supp. 3d at 151 (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)(1)). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

2. Proclamation 10949

On June 4, 2025, President Trump issued Proclamation 10949 under section 212(f) of the INA, codified at 8 U.S.C. § 1182(f), suspending or limiting entry into the United States for certain noncitizens from 19 countries, including Iran. See 90 Fed. Reg. at 24498–99. Proclamation 10949 included an exception for individuals who serve "a United States national interest." Id. at 24503. After the President issued Proclamation 10949, the State Department "sent implementing guidance to all diplomatic and consular posts worldwide . . . inform[ing]

consular officers that . . . even if an applicant is otherwise eligible for a visa, if she is 'subject to [the Proclamation]' she 'must be refused . . . unless [she] qualifies for one of the [Proclamation's] narrowly defined exceptions.'"[2] Thein v. Trump, No. 25-cv-02369, 2025 WL 2418402, at *3 (D.D.C. Aug. 21, 2025); Momeni v. Blinken, No. 24-cv-04879, 2026 WL 1483976, at *2 (C.D. Cal. May 27, 2026) ("In implementing the Proclamation, Defendants have established a policy of refusing visa applications pursuant to § 1182(f)."). Pursuant to Proclamation 10949 and the implementing guidance and § 1182(f), Defendants have directed "consular officers to refuse . . . all visa applications by applicants who are subject to the Proclamation, regardless of their application's status or circumstances . . . includ[ing] retroactively rejecting already approved and adjudicated visa applications." Momeni, 2026 WL 1483976, at *2. Plaintiffs refer to this as the "No Visa Policy." [Am. Compl. ¶ 1].

On June 9, 2025, the State Department sent a cable regarding national interest exceptions ("NIEs") (the "NIE Cable") to all diplomatic and consular posts regarding "the process by which applicants can be approved on a case-by-case basis for an NIE." [ECF No. 13-9 at 1]. The NIE Cable stated that "NIEs should be used rarely and the relationship of the travel to U.S. national interests should be exceptional in nature," and that the "Secretary of State has delegated the authority to approve NIEs on a case-by-case basis to the [Consular Affairs] assistant secretary or [senior bureau official]." [Id. at 2]. Plaintiffs refer to this as the "No NIE Policy." [Am. Compl. ¶ 1].

---

[2] The Department of State's Foreign Affairs Manual lists ineligibility for entry under 8 U.S.C. § 1182(f) as a basis for refusing a visa application. 9 FAM 301.4-1(a).

### B. Factual Background

Mostafavi, an Iranian national, is a physician and researcher who has passed all United States medical licensing exams and obtained a certification from the Educational Commission for Foreign Medical Graduates. [Am. Compl. ¶ 26]. Assadzadeh and A.S.S.M., both also Iranian nationals, are derivative applicants for the immigrant visa. [Id. ¶ 29]. Mostafavi has been offered a fully funded research and imaging fellowship at Harvard University. [Id. ¶ 26].

Plaintiffs previously submitted a Form I-140 petition to obtain an immigrant visa, which was approved on April 26, 2022, and forwarded to the NVC. [Am. Compl. ¶ 27]. On November 8, 2022, Plaintiffs submitted their DS-260 application with additional information. [Id. ¶ 28]. As of November 30, 2022, they were considered "documentarily qualified" or "documentarily complete," but their visa interview at the U.S. embassy in Yerevan, Armenia was nonetheless not scheduled until May 23, 2024. [Id. ¶ 83]. Plaintiffs attended their interview in Yerevan on May 23, 2024, and following the interview, the consular officer refused Plaintiffs' visa applications, issued a non-final 221(g) notice for administrative processing, and requested additional information through DS-5535 responses from Plaintiffs. [Id. ¶ 30]. Plaintiffs provided their DS-5535 responses that same day. [Id.].

Plaintiffs' applications cleared administrative processing on May 21, 2025, [3] [Am. Compl. ¶ 88], and they received an email from the consulate that day stating "[w]e are pleased to inform you that your immigrant visas may be processed to conclusion," [ECF No. 13-2]. The U.S. embassy in Yerevan instructed Plaintiffs to send in their passports so that the visas could be

---

[3] While their applications were in administrative processing, Plaintiffs brought a mandamus and Administrative Procedure Act lawsuit against the government for unreasonable delay. See Saadat Mostafavi v. Rubio, No. 25-cv-10185 (D. Mass.). Plaintiffs voluntarily dismissed their complaint on July 2, 2025. Id. at Dkt. No. 23.

issued ("stamped"), [Am. Compl. ¶ 89]; [ECF No. 13-2 (email from the U.S. embassy in Yerevan providing instructions for Plaintiffs to submit passport and photos through the embassy courier service)]. Plaintiffs attempted to comply with the embassy's instructions for submission of their passports, but a technical error in the embassy's internet portal prevented Plaintiffs from printing the required unique identification number for their submission. [Am. Compl. ¶ 90]. Plaintiffs sent numerous emails requesting assistance but did not obtain any meaningful assistance for three weeks. [ECF No. 13-6 ¶¶ 11–12].

Then, on June 4, 2025, Proclamation 10949 was issued, and on June 18, 2025, the consular officer sent Plaintiffs an email stating that they were found ineligible for immigrant visas under Proclamation 10949 and INA 212(f) and that the "decision cannot be appealed." [Am. Compl. ¶¶ 93, 104]; [ECF No. 13-2 at 1]. The email also stated that a National Interest Exception (NIE) would not be granted in Plaintiffs' case but provided no further explanation. [ECF No. 13-2 at 1].

### C. Procedural History

Plaintiffs filed their original complaint on August 15, 2025, [ECF No. 1], and their Amended Complaint on September 10, 2025, [Am. Compl.]. Defendants moved to dismiss on February 13, 2026, [ECF No. 22], Plaintiffs filed an opposition on February 27, 2026, [ECF No. 25], and Defendants responded on March 11, 2026, [ECF No. 29].

In their Amended Complaint, Plaintiffs bring nine claims: Count I alleging that Proclamation 10949 is unlawful based on the nondelegation and major questions doctrines; Count II alleging that the No NIE Policy is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); Count III alleging that the No NIE Policy results in an unlawful withholding in violation of 5 U.S.C. § 706(1); Count IV alleging that the No Visa Policy is not in accordance

with the law in violation of 5 U.S.C. § 706(2)(C); Count V alleging that the No Visa Policy is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); Count VI alleging that the withholding of Plaintiffs' visas violates 5 U.S.C. § 706(2); Count VII alleging that Defendants' withholding of the adjudication and issuance of their visas is in violation of 5 U.S.C. § 706(1); Count VIII alleging that there has been unreasonable delay in the adjudication of Plaintiffs' visa applications in violation of 5 U.S.C. § 555(b); and Count IX alleging a claim under the Mandamus Act, 28 U.S.C. § 1361 requesting adjudication of Plaintiffs' visa applications. [Am. Compl. ¶¶ 141–252].

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011); Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

Defendants have moved to dismiss all of Plaintiffs' claims, asserting that Count I and Counts IV through IX should be dismissed based on the doctrine of consular nonreviewability; that Count I should also be dismissed because Section 1182(f) does not violate the non-delegation doctrine and Proclamation 10949 does not violate the major questions doctrine; and that Counts II through IX should be dismissed for failure to state a claim because Proclamation 10949 and the implementing policies are in accordance with the statutory framework and cannot be challenged under the Administrative Procedure Act ("APA"). See generally [ECF No. 23].

### A. Consular Nonreviewability

The Court will first turn to Defendants' argument that all of Plaintiffs' claims challenging the denial of their visa applications based on the No Visa and No NIE Policies should be dismissed based on the doctrine of consular nonreviewability. [ECF No. 23 at 14–16]. "A consular officer's decision 'to admit or to exclude an alien' is generally 'final and conclusive,'" Teles de Menezes v. Rubio, 156 F.4th 1, 9 (1st Cir. 2025) (quoting Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024)), and under the doctrine of consular nonreviewability, a court is barred from reviewing a consular officer's final decision denying a visa application, Muñoz, 602 U.S. at 907–08.

Defendants argue that in Count I and Counts IV through IX, Plaintiffs ask the Court to review the consular officer's June 18, 2025, denial of their visa applications pursuant to section 212(f) of the INA and Proclamation 10949 to evaluate whether the denial was unlawful or improper, and that the consular nonreviewability doctrine prohibits the Court from doing so.

[ECF No. 23 at 15]. Plaintiffs seemingly do not contest that a consular officer has already adjudicated and refused their visa applications, [Am. Compl. ¶¶ 191, 209, 232, 244], but argue that the doctrine does not apply to their claims, [ECF No. 25 at 9–13].

First, Plaintiffs contend that the doctrine is not applicable to challenges regarding the "authority of the consul to take or fail to take action as opposed to a decision taken within the consul's discretion." [Id. at 9 (quoting Patel v. Reno, 134 F.3d 929, 931–32 (9th Cir. 1997)]. They argue that the denial of their visa applications was not a decision made within the consular's discretion because the State Department's implementation guidance for Proclamation 10949 required consular officers to refuse their visas thus making the decision nondiscretionary. [Id. at 10 (citing Thein v. Trump, No. 25-cv-02369 (D.D.C. Aug. 21, 2025), 2025 WL 2418402)]. This argument is unavailing. "A consular office is required by law to act on visa applications," Patel, 134 F.3d at 932, and while the consular nonreviewability doctrine "does not preclude claims to compel [the State Department] to adjudicate a visa application when it has a nondiscretionary duty to do so," Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 152–53 (D. Mass. 2024); see Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023) (consular nonreviewability does not preclude claims seeking to compel final adjudication of a visa application), here, Plaintiffs' visa applications have already been adjudicated, [Am. Compl. ¶¶ 191, 209, 232, 244]; see Thein, 2025 WL 2418402, at *3, 10 (finding that the claims of plaintiffs who had "received an email informing them that a consular officer had found them 'ineligible for an immigrant visa under 212(f) of the Immigration and Nationality Act, pursuant to' Proclamation 10949" were barred by the doctrine of consular nonreviewability); Al-Shakliah v. Rubio, No. 25-cv-03870, 2026 WL 1283663, at *6 (D.D.C. May 11, 2026) (finding that the plaintiffs' visa applications, which were first approved but subsequently denied based on

Proclamation 10949, had been adjudicated and plaintiffs' claims challenging their denials were barred).

Plaintiffs next contend that the doctrine of consular nonreviewability does not apply where "the government has denied a visa if the government did not act 'on the basis of a facially legitimate and bona fide reason.'" Patel, 134 F.3d at 932 n.1 (quoting Kleindienst v. Mandel, 408 U.S. 753, 770 (1972)). This argument is equally flawed. The Supreme Court has found that this exception to the doctrine is only possible in situations where "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." Muñoz, 602 U.S. at 908 (quoting Trump v. Hawaii, 585 U.S. 667, 703 (2018); see ZigZag, LLC v. Kerry, 2015 WL 1061503, at *5 (D. Mass. Mar. 10, 2015) ("In the wake of the Mandel decision . . . courts in this circuit, have interpreted the decision as potentially providing for a limited exception to the doctrine of consular nonreviewability 'when a consular official's denial of a visa petition infringes upon a constitutional right of an American citizen.'" (quoting Pishdadiyan v. Clinton, No. 11-cv-10723, 2012 WL 601907, at *14 (D. Mass. Feb. 7, 2012)). Plaintiffs are not U.S. citizens,[4] so this exception does not apply here.

Lastly, Plaintiffs contend that the consular nonreviewability doctrine does not apply here because they are challenging the No Visa Policy and No NIE Policy as improperly promulgated rules that are not in accordance with the law. [ECF No. 25 at 12]. Defendants respond that the APA only permits judicial review of final agency actions, and that the final agency action here

---

[4] Plaintiffs also briefly argue that although they are not U.S. citizens, Harvard University, as a potential employer, has a constitutional right akin to that discussed in Muñoz. [ECF No. 25 at 12–13]. Harvard University is not, however, a party to this action, and even if it was, Plaintiffs cite to no case law or other support for their argument that the exception should be extended in such a fashion.

was the denial of Plaintiffs' visa applications, not the adoption of any policies. [ECF No. 29 at 3].

"[I]t is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them 'to assure that the executive departments abide by the legislatively mandated procedures.'" California v. Mullin, 833 F. Supp. 3d 50, 66 (D. Mass. 2026) (quoting Pietersen v. Dep't of State, 138 F.4th 552, 560 (D.C. Cir. 2025) (quoting Int'l Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798, 801 (D.C. Cir. 1985))). While the doctrine of consular nonreviewability shields a consular officer's determination as to a specific application, it "does not extend so far as to allow the Executive to issue a policy deviating from 'legislatively mandated procedures.'" Ariani v. Rubio, No. 25-cv-00349, Dkt. No. 90 at 4 (D.D.C. June 10, 2026) (quoting Int'l Union of Bricklayers & Allied Craftsmen, 761 F.2d at 801). "A policy challenge can proceed even where the named plaintiffs themselves have received final visa refusals if the refusals followed from the policy under attack." Al-Shakliah, 2026 WL 1283663, at *5 (citing Tate v. Pompeo, 513 F. Supp. 3d 132, 142 (D.D.C. 2021)). Accordingly, the Court finds that Plaintiffs' challenges to the government's individualized determinations regarding their visa applications are barred by the doctrine of consular nonreviewability. However, to the extent Plaintiffs' challenge the No Visa Policy, the No NIE Policy, or Proclamation 10949 itself, those claims are not foreclosed by the doctrine.

The Court notes that Plaintiffs' Amended Complaint is far from a "short and plain statement of the claim[s]" showing why Plaintiffs are entitled to relief, Fed. R. Civ. P. 8, and instead intermingles a multitude of different factual and legal conclusions such that it is difficult to discern the precise theory upon which each claim is based. See [Am. Compl. ¶¶ 141–252].

Accordingly, the Court will briefly review each of the nine claims and decide which ostensibly challenge individualized decisions regarding their visa petitions, and are therefore barred by consular nonreviewability, and which challenge Defendants' implementation of Proclamation 10949 more generally.

1. Count I

In Count I, Plaintiffs allege that (1) "Proclamation 10949 exceeds the express delegation of 8 U.S.C. [§] 1182(f)['s] authority," [Am. Compl. ¶ 150], (2) "the use of INA 212(f) by Proclamation 10949 lacks an intelligible principle that justifies the encroachment on the inherent power of Congress," [id.], (3) "Proclamation 10949 is unlawful based on the nondelegation doctrine and major questions doctrine," [id. ¶ 155], and (4) "INA 212(f), and/or 8 U.S.C. § 1185(a), when construed to mean the President can end all immigration into the [U.S.] at any time for any reason, is unconstitutional and should be struck down," [id. ¶ 156]. As such, the Court finds that Count I pertains to the lawfulness of Proclamation 10949, INA 212(f), and 8 U.S.C. § 1185(a) generally and review is not precluded by the doctrine of consular nonreviewability.

2. Counts II and III

Defendants do not argue that Counts II or III are barred by consular nonreviewability, [ECF No. 23 at 14], and the Court largely agrees, based on its review of the Amended Complaint. Count II alleges that the No NIE Policy is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A), [Am. Compl. ¶ 159], and Count III alleges that the No NIE Policy is an unlawful withholding that violates 5 U.S.C. § 706(1), [id. ¶ 170].

The Court notes, however, that certain allegations in Counts II and III seem to refer to the individual determinations on and denials of Plaintiffs' own visas. In Count II, Plaintiffs allege

that the Defendants declined to examine their approved EB-2 NIW petition as evidence of national interest considerations, [Am. Compl. ¶ 162], and in Count III, Plaintiffs allege that "[t]he improper 212(f) refusal received by Plaintiffs fails to comport with the text of Proclamation 10949 which claims to provide for NIE," and they also refer to the email they received denying their visa applications, [id. ¶ 173]. To the extent that Counts II and III challenge the denial of Plaintiffs' own visa applications, review of those claims is precluded by the doctrine of consular nonreviewability.

3. Count IV

Defendants contend that Count IV is barred by the doctrine of consular nonreviewability, [ECF No. 23 at 14], because it alleges that "the consular officer could not 'rely on INA § 212(f) to refuse' issuing their requested visas," [id. (quoting [Am. Compl. ¶ 181])]. Upon review, however, Defendants leave out key language from their quotation of the Amended Complaint. In paragraph 181 of the Amended Complaint, Plaintiffs aver that "it is well settled law that Defendants cannot rely on INA § 212(f) to refuse adjudication of immigrant visas," referring to "visas" generally, rather than limiting the claim to their own specific applications. [Am. Compl. ¶ 181 (citing Rai v. Biden, 567 F. Supp. 3d 180 (D.D.C. 2021)]. Further, in Count IV, Plaintiffs claim that the State Department's § 1182(f) guidance is in excess of statutory authority, [id. ¶ 185], which is also consistent with the sub-section header for Count IV which suggests that the claim Plaintiffs bring in Count IV is that the No Visa Policy is not in accordance with the law and therefore violates 5 U.S.C. § 706(2)(C). [Id. at 39]. The Court thus concludes that Count IV presents a challenge to the No Visa Policy overall, rather than to the individualized determinations resulting in Plaintiffs' visa denials.

4. Count V

Defendants argue that Count V also challenges Plaintiffs' own visa denials rather than a general policy. [ECF No. 23 at 14]. Like Count IV, the section header describing Count V suggests that Plaintiffs intend the claim to assert a challenge to the State Department's No Visa Policy overall. See [Am. Compl. at 41]. In Count V, Plaintiffs allege that "the restrictions on entry imposed by Proclamation 10949 are not grounds for the State Department to depart from the stated policies and regulations that mandate adjudication of immigrant visa applications." [Id. ¶ 193]. Count V does, however, also include allegations specific to the denial of Plaintiffs' own visa applications. See [Am. Compl. ¶ 191 ("Defendants here have no legal basis . . . to suspend issuance of Plaintiffs' immigrant visas . . . .")]; [id. ¶ 194 ("Because Proclamation 10949 does not give authority to the State Department to suspend Plaintiffs' immigrant visas, Defendants' actions are arbitrary, capricious, and not in accordance with the law."). To the extent that Plaintiffs intend to challenge the denial of their individual visa applications in Count V, those claims are barred by the doctrine of consular nonreviewability, but to the extent that Plaintiffs intend to challenge the State Department's overall No Visa Policy as arbitrary and capricious, consular nonreviewability does not preclude review.

5. Counts VI, VII, VIII, and IX

Counts VI through IX are clearly challenges to Plaintiffs' individual visa application denials, [Am. Compl. ¶¶ 195–252], and, therefore, review is precluded by the doctrine of consular nonreviewability. In Count VI, Plaintiffs allege that Defendants violated the APA by withholding issuance of their visas for an unreasonable amount of time. [Am. Compl. ¶¶ 195–209]. Similarly, in Count VII Plaintiffs allege that Defendants have violated 5 U.S.C. § 706(1) by withholding the adjudication and processing of their visa applications, which Plaintiffs claim

are a mandatory entitlement that they are owed. [Id. ¶¶ 210–222]. As established, however, Plaintiffs applications have already been adjudicated, and to the extent that Plaintiffs contend that the adjudication they received was insufficient, that would be an impermissible challenge to the consular officer's decision. Finally, Counts VIII and IX allege that Defendants have unreasonably delayed in adjudicating Plaintiffs' visa applications because 212(f) was not a valid basis for denial of their visas, [id. ¶¶ 223–233], and seek a writ of mandamus compelling the State Department to adjudicate their applications and issue them visas, [id. ¶¶ 234–252]. Again, the Court is precluded from reviewing these challenges to the consular officer's decision. See Al-Shakliah, 2026 WL 1283663, at *6–7 (finding that substantially similar claims were barred by the doctrine of consular nonreviewability).

In sum, Counts I and IV are not barred by the doctrine of consular nonreviewability. Counts VI through IX are entirely barred by the doctrine of consular nonreviewability, and Defendants' motion to dismiss those claims is granted. Counts II, III, and V are barred in part by the doctrine of consular nonreviewability, and to the extent those claims challenge Plaintiffs' own visa decisions, as discussed above, they are dismissed. But, to the extent that Counts II, III, and V challenge Defendants' general policies, review of those claims is not foreclosed.

### B. The Non-Delegation and Major Questions Doctrines

Next, Defendants argue that Count I should be dismissed because § 1182(f) does not violate the non-delegation doctrine and Proclamation 10949 does not violate the major questions doctrine. [ECF No. 23 at 16–19].

"The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government." Gundy v. United States, 588 U.S. 128, 132 (2019). Congress may, however, obtain "'the assistance of its coordinate Branches'—and in particular, may confer

substantial discretion on executive agencies to implement and enforce the laws." Id. (quoting Mistretta v. United States, 488 U.S. 361, 372 (1989)). Plaintiffs allege that "the delegation of authority from Congress to the President in the broad language of 8 U.S.C. [§] 1182(f) has its limits," [Am. Compl. ¶ 145], that "the power to dictate the terms of immigration is a 'core Congressional power' that cannot be abdicated to the President by an unlimited interpretation of the INA," [id. ¶ 153 (quoting V.O.S. Selections, Inc. v. Trump, 149 F.4th 1312, 1335 (Fed. Cir. Aug. 29, 2025) (discussing tariffs)], and finally that "INA 212(f), and/or 8 U.S.C. § 1185(a), when construed to mean the President can end all immigration into the US at any time for any reason, is unconstitutional," [id. ¶ 156]. Defendants contend that the Supreme Court in United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), upheld the predecessor statute to § 1182(f), and that precedent was reaffirmed in Trump v. Hawaii, 585 U.S. 667 (2018), which completely forecloses Plaintiffs' challenge, [ECF No. 23 at 16].

Defendants are correct. Under 8 U.S.C. § 1182(f):

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

Over the last year, other courts faced with the same question in connection with Proclamation 10949 have also concluded that § 1182(f) does not violate the nondelegation doctrine. See Thein, 2025 WL 2418402, at *14 n.14 (finding plaintiff's argument that § 1182(f) is "unconstitutional under the non-delegation doctrine and the separation of powers" was borderline frivolous); Ariani, 2025 WL 3653503, at *6 (holding that challenge to 212(f) based on the nondelegation doctrine was futile); Noori v. Rubio, No. 25-cv-00400, 2025 WL 3691400, at

*5 (C.D. Cal. Oct. 24, 2025) (dismissing nondelegation doctrine challenge to Proclamation 10949).

Regarding Plaintiffs' challenge to Proclamation 10949 itself, the major questions doctrine is "reserved for 'extraordinary cases in which the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority.'" Ivanov v. Trump, No. 26-cv-00915, 2026 WL 2494805, at *15 n. 23 (D.D.C. Aug. 25, 2026) (quoting West Virginia v. EPA, 597 U.S. 697, 700 (2022)). Defendants argue that Hawaii clearly forecloses a major questions challenge to 212(f) because the Supreme Court in Hawaii held that a "materially identical" presidential proclamation was consistent with the statute. [ECF No. 23 at 19 (citing Hawaii, 585 U.S. at 683–84 ("By its plain language, § 1182(f) grants the President broad discretion to suspend the entry of aliens into the United States.")].

In support of their claim, Plaintiffs contend that the political and economic significance of the power asserted by Defendants pursuant to 212(f) gives reason to hesitate before deciding that Congress intended to confer such power. [ECF No. 25 at 25]. They also argue that the "use of the word 'class' in Proclamation 10949 reveals that the statutory text is . . . ambiguous." [ECF N0. 25 at 25 (citing Proclamation 10949)]. In support of this theory, they suggest that because the entry ban established in Proclamation 10949 does not apply to all foreign nationals, it must therefore have been issued pursuant to the "class" "channel" of 8 U.S.C. § 1182(f), and that the "class" of foreign nationals defined in Proclamation 10949 is at odds with the use of the word "class" across the immigration code. [ECF No. 25 at 25]. According to Plaintiffs, throughout the INA, "class" is only ever used to identify foreign nationals by "shared employment or financial status, criminal or immoral behavior, inadmissibility criteria, family

relationship, or visa category" or in connection with immigrant intent, whereas in the Proclamation, it is used to group foreign nationals by their nationality. [ECF No. 25 at 26].

Defendants aver that Hawaii forecloses Plaintiffs' major questions doctrine claim because the Supreme Court in that case found that 212(f) clearly granted the President the authority to suspend the entry of foreign nationals into the United States. [ECF No. 29 at 5–6 (citing Hawaii, 585 U.S. at 683–84)]. This Court agrees. As discussed above, in the context of a very similar proclamation, the Supreme Court has concluded that "§ 1182(f) exudes deference to the President in every clause," and "vests the President with 'ample power' to impose entry restrictions" in situations almost identical to those at issue here. Hawaii, 585 U.S. at 684; see Jahani v. Rubio, No. 25-cv-00989, 2025 WL 3653542, at *6 (D.D.C. Dec. 17, 2025) (holding that an argument that Proclamation 10949 "exceeds the President's authority under section 212(f) or is otherwise based on an insufficient justification would likewise be futile in light of the Supreme Court's decision Trump v. Hawaii"). As such, Defendants' motion to dismiss is granted as to Count I.

### C. The No NIE Policy (Counts II and III)

The Court will now turn to Plaintiffs' challenges to the State Departments' policies implementing Proclamation 10949, starting with the No NIE Policy.

"The APA directs courts reviewing agency action to 'hold unlawful and set aside' actions found to be 'arbitrary, capricious . . . or otherwise not in accordance with law' or 'in excess of statutory . . . authority.'" Thein, 2025 WL 2418402, at *15 (quoting 5 U.S.C. § 706(2)). In Count II, Plaintiffs challenge the No NIE Policy as arbitrary and capricious in violation of § 706(2)(A) of the APA, [Am. Compl. ¶¶ 157–167], and in Count III, Plaintiffs challenge the No NIE Policy as an unlawful withholding in violation of § 706(1) of the APA, [id. ¶¶ 168–173].

Defendants' only argument as to why Counts II and III should be dismissed is that there is no private right of action that allows Plaintiffs to challenge the State Department's implementation of the national interest exception mentioned in Proclamation 10949. [ECF No. 23 at 21]. Specifically, Defendants contend that "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress" rather than the President, [id. at 20 (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001)], and that "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders," [id. (citing Chen Zhou Chai v. Carroll, 48 F.3d 1331, 1338–39 (4th Cir. 1995))]. Defendants also cite to the language in Proclamation 10949 stating that the proclamation "is not intended to, and does not, create any right or benefit, substantive or procedural, . . . against the United States, its departments, agencies, or entities, its officers." [Id. at 21 (quoting Proclamation 10949 § 9(c)]. Additionally, while Defendants admit that courts may review final agency actions implementing a presidential directive, [ECF No. 29 at 6], they contend that Plaintiffs' APA claims are "an indirect—and impermissible—attempt to enforce private rights under [Proclamation 10949]." [ECF No. 29 at 6 (quoting California v. EPA, 72 F.4th 308, 318 (D.C. Cir. 2023))].

Plaintiffs respond that this argument mischaracterizes their claims, in which they challenge the No NIE Policy through the APA, rather than through any alleged private right of action created by the Proclamation. [ECF No. 25 at 27]. According to Plaintiffs, even if the national interest exception is a "creation" of Proclamation 10949, the State Department would still be required to follow the APA in implementing the exception, and that "[a]gency actions implementing presidential proclamations are subject to judicial review under the APA." [Id. at 27].

1. Count II (5 U.S.C. § 706(2)(A))

Plaintiffs have the better argument with respect to their arbitrary and capricious claim. Although Defendants are correct that judicial review is not appropriate insofar as Plaintiffs' claim seeks to challenge the State Department's noncompliance with Proclamation 10949, see Sur Contra La Contaminación v. EPA, 202 F.3d 443, 449 (1st Cir. 2000) (holding that plaintiffs could not challenge a permit because it allegedly violated a presidential executive order), the Court does not interpret the First Circuit's holding in Sur Contra La Contaminación to be so broad as to foreclose Plaintiffs' claim that the implementing policy is arbitrary and capricious. "[Proclamation 10949's] no-rights clause makes clear that it does not itself create rights enforceable against the United States," but "that disclaimer does not, standing alone, foreclose APA review of agency action implementing the Proclamation." Al-Shakliah, 2026 WL 1283663, at *10.

In Count II, Plaintiffs allege that the No NIE Policy is arbitrary and capricious for several reasons, including that, in connection with the policy, Defendants refuse to accept additional documents for NIE and instead require an entirely new visa application, fail to refer to the Department of Homeland Security's determinations of national interest through USCIS, and fail to provide channels or guidance as to the submission of materials in support of a waiver. [Am. Compl. ¶¶ 160–164]. Although Plaintiffs assert that the policy makes the national interest waiver described in Proclamation 10949 a "nonexistent exception," [id. ¶ 163], their claim is not seeking to enforce a right established by the Proclamation but rather to challenge whether the State Department's implementation of the directives in the proclamation complied with the APA.

2. Count III (5 U.S.C. § 706(1))

With respect to Plaintiffs' unlawful withholding claim, Defendants' arguments prevail. In Count III, Plaintiffs allege that the procedural guidance issued by the State Department restricts the national interest waiver determinations to senior bureau officials and removes their review from the purview of consular officers. [Am. Compl. ¶ 171]. They further contend that this constitutes an unlawful withholding in violation of § 706(1) of the APA. [Id. ¶ 170]. A claim under § 706(1), "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted). That is not the case here where the State Department did issue guidance as to how national interest determinations should be evaluated, see [ECF No. 13-9], and Plaintiffs simply disagree with the contours of that guidance, see Al-Shakliah, 2026 WL 1283663, at *10 (finding that with respect to the No NIE Policy the State Department had acted, and that "[p]laintiffs may disagree with the procedural structure of those actions, but disagreement is not a withholding").

For these reasons, Defendants' motion to dismiss is denied with respect to Count II[5] and granted with respect to Count III.

**D. The No Visa Policy (Counts IV and V)**

1. Count IV (5 U.S.C. § 706(2)(C))

In Count IV, Plaintiffs allege that the No Visa Policy is not in accordance with the law and is in excess of statutory authority. [Am. Compl. ¶ 185]. Specifically, Plaintiffs claim that neither § 1182(f) nor § 1182(a) permit the State Department to suspend adjudication of

[5] As discussed above in connection with the doctrine of consular nonreviewability, Count II is dismissed to the extent that it challenges the denial of Plaintiffs' individual visa applications.

immigrant visa applications. [Id. ¶¶ 183–184]. In support of their claim, they point to several recent cases finding that an entry suspension is not akin to a suspension on all visa adjudications. [Id. ¶¶ 177–180 (citing Gomez v. Trump, 485 F. Supp. 3d 145, 192 (D.D.C. 2020); Milligan v. Pompeo, 502 F. Supp. 3d 302, 322 (D.D.C. 2020); Young v. Trump, 506 F. Supp. 3d 921, 945 (N.D. Cal. 2020); Tate, 513 F. Supp. 3d at 154)].

Defendants move to dismiss on the basis that the "text, context, and logic of the statutory framework governing the issuance of visas" contradicts Plaintiffs' claim and that under this statutory framework, consular officers do not issue visas to individuals who will be unable to enter the country. [ECF No. 23 at 22]. In support of this argument, Defendants suggest that Congress has created a "double check system" where an alien looking to enter the United States must "demonstrate his admissibility before two different administrative officials," [id. (emphasis added) (quoting Castaneda-Gonzalez v. INS, 564 F.2d 417, 426–27 (D.C. Cir. 1977)], the first being the consular officer who issues the alien's visa and the second being a Department of Homeland Security officer at a port-of-entry who determines admissibility, [id.]. Defendants contend that inherent in this "double check system" is the idea that consular officers must ensure that the alien is not inadmissible, including under § 1182(f), before issuing a visa. [Id. at 23]. Defendants claim that the State Department has implemented presidential proclamations using visa denials for decades, which is why the President has historically placed responsibility for implementing the proclamations with the State Department rather than the Department of Homeland Security or the Attorney General. [Id.]. Defendants also aver that Congress has historically recognized that the State Department has the authority to deny visas to individuals who are subject to an entry restriction under § 1182(f), [id. at 24], pointing to the 1994 Foreign Relations Authorization Act which directed consular officers to review information regarding the

excludability of aliens under the INA, see Pub. L. No. 103–236, § 140(c), 108 Stat. 382, 399–400 (1994), the Homeland Security Act of 2002, 6 U.S.C. § 236(d)(2), which states:

> Nothing in this section shall be construed to affect any delegation of authority to the Secretary of State by the President pursuant to any proclamation issued under section 212(f) of the Immigration and Nationality Act (8 U.S.C. 1182(f)), consistent with the Secretary of Homeland Security's authority to refuse visas in accordance with law,

id., and the Cuban Liberty and Democratic Solidarity Act of 1996, Pub. L. No. 104-114, 110 Stat. 785, which Defendants claim shows Congress "understood [that] visas were denied to people subject to a Presidential proclamation," [ECF No. 23 at 24–25]. Defendants also analogize the State Department's No Visa Policy to the naval blockade at issue in Sale, a case in which the Supreme Court concluded that the President could establish a naval blockade pursuant to § 1182(f). 509 U.S. at 187; see [ECF No. 23 at 26 (arguing that Sale demonstrates the President's ability to limit attempts to enter through actions that occur before the actual moment of entry)]. And finally, they claim that Plaintiffs' interpretation of the statutory framework would lead to impractical results where consular officers could issue a visa to an individual knowing that the individual would not currently be able to enter the country. [Id. at 26–27].

Yet, as acknowledged by Defendants, "entry and visa issuance are distinct concepts." [ECF No. 23 at 25]. There exists a "basic distinction between admissibility determinations and visa issuance that runs throughout the INA," Hawaii, 585 U.S. at 694, and "[t]he Act is rife with examples distinguishing between the two concepts," id. at 694 n.3. While the Hawaii Court did reference two distinct points of consideration "in the process of gaining entry (or admission) into the United States," the statutory framework is more nuanced than Defendants suggest. Id. at 695. First, the Supreme Court has stated that individuals who are inadmissible under § 1182 are screened out as ineligible to obtain a visa, but the Court specifically referenced the

considerations listed in § 1182(a), including "health risks, criminal history, or foreign policy consequences," id., and courts have since found that the Court's reference to § 1182 refers to the "visa ineligibility grounds found in 8 U.S.C. § 1182(a), not the entry determination grounds found in 8 U.S.C. § 1182(f)," Momeni, 2026 WL 1483976, at *3. The Court further explained that the second screening occurs at the time of entry if an immigration officer determines that the individual is "inadmissible under this chapter, or any other provision of law," and specifically referenced § 1182(f), suggesting that inadmissibility under § 1182(f) is relevant to the actual admission process, rather than visa eligibility. Hawaii, 585 U.S. at 695 (quoting 8 U.S.C. § 1201).

Recent case law also weighs heavily against Defendants' position. Courts have found, with respect to Proclamation 10949 and other similar proclamations, that although the President may suspend the entry of certain aliens through a proclamation, a "suspension of entry under § 1182(f) . . . has no bearing on whether the person is inadmissible under § 1182(a) or ineligible to receive a visa under § 1201(g)." Momeni, 2026 WL 1483976, at *3 (quoting Young, 506 F. Supp. 3d at 945); see also Goodluck v. Biden, 104 F.4th 920, 922 (D.C. Cir. 2024) (A visa "does not guarantee admission; instead, it 'merely gives the alien permission to arrive at a port of entry and have an immigration officer independently examine the alien's eligibility for admission.'" (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1157 (D.C. Cir. 1999))). Accordingly, courts have concluded "that the Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications." Thein, 2025 WL 2418402, at *15 (collecting cases); see Milligan, 502 F. Supp. 3d at 314 ("[S]ections 1201(g) and 1182(a) do not authorize [the State Department] to suspend visa adjudications when the President suspends entry." (citing Gomez, 485 F. Supp. 3d at 192)); Noori, 2025 WL 3691400, at *5 ("[T]he

Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications."); Al-Shakliah, 2026 WL 1283663, at *12 (stating that this argument is "well-trodden ground" and "[a] person subject to a Presidential Proclamation issued pursuant to § 1182(f) . . . is 'merely ineligible to enter,' not ineligible to receive a visa" (quoting Milligan, 502 F. Supp. 3d at 315)) (collecting cases). This Court sees no reason to depart from these holdings and, as such, Defendants' motion to dismiss Count IV is denied.

2. Count V (5 U.S.C. § 706(2)(A))

Defendants mount little further challenge to Count V, claiming solely that the APA only provides for review of agency actions, not those of the President. [ECF No. 23 at 27]. While that is true, in Count V, Plaintiffs challenge the State Department's No Visa Policy implementing the President's directives in Proclamation 10949, not the Proclamation itself, and "agency action that carries out a presidential directive is ordinarily subject to APA review." Agatha v. Trump, 151 F.4th 9, 11 (1st Cir. 2025); see Noori, 2025 WL 3691400, at *6 ("Defendants' may not cabin their entire 'No Visa Policy' as being exclusively within the auspices of the West Wing. It is not the President who prints visas or conducts immigration interviews."). Defendants' motion to dismiss Count V is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 22], is **GRANTED IN PART** and **DENIED IN PART**. Counts I, III, VI, VII, VIII, and IX are dismissed in their

entirety. Counts II and V are dismissed only insofar as they challenge the denial of Plaintiffs' individual visa applications, as discussed in detail above.

**SO ORDERED.**

September 18, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE